**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
JOHNNY THORNBURN,

                          Plaintiff,                    **MEMORANDUM**
                                                **AND ORDER**

        - against -
                                         CV 16-3839 (DRH) (AKT)

DOOR PRO AMERICA, INC.,

                          Defendant.

----------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    <u>PRELIMINARY STATEMENT</u>

Plaintiff Johnny Thornburn ("Plaintiff") commenced this action against Defendant Door Pro America, Inc. ("Defendant" or "Door Pro") asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Labor Law ("NYLL") §§ 190 *et seq.*, 12 New York Codes, Rules and Regulations ("NYCRR") §142, and the common law of New York. Specifically, Plaintiff alleges that the Defendant, Plaintiff's former employer, maintained a policy through which it failed to pay Plaintiff overtime compensation at the rate of one and one-half (1.5) times his regular rate of pay for all hours worked in excess of forty (40) per week, in violation of the FLSA, NYLL, and the NYCRR. *See generally* Amended Complaint ("Am. Compl.") [DE 22]. Plaintiff also brings claims for unlawful deduction of wages, willful failure to pay wages, failure to pay spread-of-hours pay in violation of the NYLL, and common law unjust enrichment/quantum meruit. *See id.*

Plaintiff now moves to have this action conditionally certified as a collective action pursuant to 29 U.S.C. § 216(b). Plaintiff also requests a six-year notice period for potential opt-in plaintiffs in accordance with the NYLL. *See generally* Plaintiff's Motion for Conditional

Certification ("Pl.'s Mot.") [DE 64]; Plaintiff's Memorandum in Support ("Pl.'s Mem.")

[DE 64-1]. Defendant opposes the motion, asserting, among other things, that Plaintiff has

(1) failed to demonstrate that he and the members of the putative collective are similarly situated,

and (2) failed to identify a specific common policy or practice on the part of Door Pro which

violates the FLSA. *See generally* Defendant's Memorandum of Law in Opposition of Plaintiff's

Motion for Conditional Certification ("Def.'s Opp'n.") [DE 61].

Based on the Court's review of the parties' submissions as well as the applicable law,

Plaintiff's motion is hereby GRANTED, subject to the limitations set forth in this Memorandum

and Order.

## II.    BACKGROUND

### A.    Procedural History

The instant motion for conditional certification as a collective action comes before the

Court in a somewhat unusual posture since nearly all fact discovery appears to be complete. As

such, a brief recitation of this case's procedural history is useful before addressing the facts

alleged in the pleadings and the documents accompanying this motion.

Plaintiff commenced this action with the filing of the initial Complaint on July 11, 2016.

*See* DE 1. That pleading asserted six causes of action: (1) failure to pay overtime wages in

violation of the FLSA; (2) failure to pay overtime wages in violation of the NYLL; (3) unlawful

deductions from wages in violation of the NYLL; (4) willful failure to pay wages in violation of

the NYLL; (5) failure to pay spread-of-hours pay in violation of the NYLL; and (6) common law

unjust enrichment/quantum meruit. *See id.* On September 22, 2016, Defendant filed its Answer,

asserting blanket denials of the allegations in the Complaint. *See* DE 14. An Initial Conference

was held before this Court on October 2, 2016, during which the Court set in place a Case

Management and Scheduling Order. *See* DE 18, DE 19. Plaintiff served his first set of discovery requests on Defendant the same day. DE 18. Significantly, at the Initial Conference, Plaintiff's counsel stated his intent to amend the Complaint to bring this action as a collective action. *See id.* On October 10, 2016, the parties filed (1) a stipulation consenting to Plaintiff's amending the Complaint, and (2) Plaintiff's Amended Complaint -- the operative pleading in this action. *See* DE 21, DE 22. The Amended Complaint asserts the same six causes of action as the initial Complaint and differs only in its assertion of collective action allegations. *See generally* Am. Compl. Defendant filed its Answer to the Amended Complaint on November 2, 2016, again asserting blanket denials of Plaintiff's allegations. *See* DE 27.

Almost immediately following the Initial Conference, friction between the parties became apparent, and counsel struggled to complete even the simplest procedural tasks without Court intervention. *See, e.g.*, DE 26, DE 28-30. Discovery between the parties nevertheless progressed through the end of 2016 and through 2017, with several discovery motions being filed and ruled upon by the Court. *See, e.g.,* DE 36-40, DE 44, DE 55. Upon the parties' failure to agree on a stipulation conditionally certifying this case as a collective action, the Court set a briefing schedule for a motion for conditional certification. *See* DE 49-54. The fully briefed motion for conditional certification was filed on August 28, 2017. *See* DE 61-65.

### B.    Allegations in the Amended Complaint

#### 1.    *Allegations as to the Plaintiff*

Plaintiff alleges that at all times relevant to this action, he was an "employee" of Defendant within the meaning of the FLSA and the NYLL. Am. Compl. ¶ 18. Defendant, an "employer" within the meaning of the FLSA and NYLL, is a domestic business corporation which specializes in the installation of garage doors and is located at 199 Brook Avenue, Deer

Park, New York 11729.[1]  *Id.* ¶¶ 19-20.  Plaintiff was employed by Defendant from around 2012

through May 2016, during which time Plaintiff worked as an "installer" at Defendant's Deer

Park location.  *Id.* ¶¶ 26-28.  Throughout the term of his employment with Defendant, Plaintiff

regularly worked Monday through Friday, from 6:30 a.m. to no earlier than 7 p.m., in addition to

occasional Saturdays.  *Id.* ¶¶ 29-30.  Plaintiff asserts he consistently worked no fewer than

twelve hours per day, sixty hours per week.  *Id.* ¶¶ 61-62.

      According to the Amended Complaint, "[r]egardless of the hours worked, Defendant paid

Plaintiff for 'piece work.'"  Am. Compl. ¶ 33.  Specifically, Plaintiff states he was compensated

at a rate of $60.00 for each garage door installed, and $40.00 for each motor installed.  *Id.* ¶¶ 34-

35.  Plaintiff alleges that the Defendant maintained no records of either the number of hours he

worked, or the number of doors and/or motors he installed per day, week, and/or pay period.  *Id.*

¶¶ 36-37.  Key to this action, Plaintiff asserts that the Defendant did not compensate him at a rate

of one-and-one-half times his regular pay rate for all hours worked in excess of forty (40) per

week.  *Id.* ¶ 38.  Additionally, the Amended Complaint states that Defendant made unlawful

deductions from Plaintiff's pay in the form of "charge back" withdrawals/deductions in 2013,

2015, and 2016.  *Id.* ¶¶ 40-42.  Specifically, from February 2016 through April 2016, Defendant

withdrew $100 per week from Plaintiff's pay in the form of "charge back" deductions.  *Id.* ¶ 43.

Plaintiff states his employment with Defendant ended in or around May 2016, at which point

Defendant willfully failed to compensate Plaintiff for eight full days of work at the end of his

term.  *Id.* ¶ 48.

---

[1]  The Court notes, since it is relative to this motion and undisputed, that Defendant has
locations in eight other states as well.  *See* Pl.'s Mem. at 1.

### 2.     *Collective Action Allegations*

Plaintiff alleges that this action is properly maintainable as a collective action under the FLSA since it is brought on behalf of Plaintiff and a collective consisting of similarly-situated employees who work or have worked for Defendant.  Am. Compl. ¶¶ 8-9.  Specifically, Plaintiff maintains that he and the potential collective action members are similarly situated "in that they were each employed by Defendant[ ] as non-exempt employees and were systematically denied premium overtime pay for hours worked beyond forty (40) in each workweek."  *Id.* ¶ 14.

### C.     The Parties' Positions

### 1.     *Plaintiff's Motion*

Plaintiff moves to conditionally certify this case as a collective action under the FLSA, proposing a nationwide collective consisting of "all individuals employed by Defendant in the position of an 'Installer' or 'Technician.'"  Pl.'s Mem. at 1.  Plaintiff argues that the appropriate standard he is required to meet for certification is a "minimal" factual showing that identifies an unlawful policy or practice in which Defendant engaged during Plaintiff's term of employment, and based on which Plaintiff and potential opt-in plaintiffs are "similarly situated" to one another.  *See id.* at 4-7.  "The single policy here is that Defendant elected to pay their 'Technicians' and 'Installers' on a piece rate basis regardless of the number of hours the employers actually worked.  (*See* Ex. 4, p. 3).  Accordingly, each 'Technician' or 'Installer', irrespective of geographic location, is similarly situated to Plaintiff, and is therefore be [*sic*] eligible for class certification."  *Id.* at 9.

In support of his motion, Plaintiff cites portions of the deposition transcript of Jason Anderson, the branch manager of Defendant's Deer Park location, as well as Plaintiff's own affidavit, Plaintiff's responses to Defendant's first set of interrogatories, and Defendant's

amended discovery responses.  *See* Declaration of Saul D. Zabell in Support of Plaintiff's

Motion for Conditional Certification ("Zabell Decl.") [DE 64-2], Exs. 1-4.  Specifically, Plaintiff

points to Defendant's response to Plaintiff's interrogatory No. 1(f), in which Defendant states

"Plaintiff was not paid by the number of hours worked, and instead was paid per work order

completed. . . . As Plaintiff was not paid according to the number of hours worked, but instead

per work order completed, there were no overtime hours."  Zabell Decl., Ex. 4 at 3; *see* Pl.'s

Mem. at 9.  According to Plaintiff, "Defendant proffers no evidence that Plaintiff was the only

'Technician' or 'Installer' paid at the piece rate basis who was denied overtime.  In fact,

Defendant's CFO conceded that each of its 'Technicians' or 'Installers' was compensated by the

same piece rate method, and that they did not track or record the hours worked by any of its

'Technicians.'"  Pl.'s Mem. at 9.  For this reason, Plaintiff's counsel asserts "it can reasonably be

concluded that Defendant systematically and unlawfully denied overtime compensation to all of

its 'Technicians' under their piece rate compensation policy."  *Id.*

Plaintiff requests that the Court approve a notice period of six years from the date

Plaintiff commenced this action.  *See* Pl.'s Mem. at 10-12.  Acknowledging that "not all opt-in

Plaintiffs are subject to the NYLL six (6) year statute of limitations," Plaintiff argues that "for

the purposes of judicial efficiency, it would be logical and efficient to produce the names once,

even if a particular state's labor laws do not share a six (6) year statute of limitations."  *Id*. at 10

n.1.

## 2. *Defendant's Opposition*

In a thirty-five page memorandum, Defendant opposes conditional certification as a

collective action and argues that if a collective must be conditionally certified, a three-year

notice period is appropriate since there is no possibility of certification of a Rule 23 class for claims under the NYLL. *See generally* Def.'s Opp'n.

Defendant's argument against conditional certification has several components. Initially, Defendant objects to the motion on the grounds that Plaintiff had previously indicated that any collective action would only involve a collective of several installers at the Deer Park location. "Now, without any prior hint that Plaintiff intended to seek conditional certification of a nationwide class, and after the expiration of the discovery deadline . . . Plaintiff suddenly seeks to expand substantially the scope of the case by seeking conditional certification as a nationwide collective action." Def.'s Opp'n. at 14-15. Accordingly, Defendant objects to what it sees as a lack of notice as to the true scope of this litigation. *See id.* at 15. Beyond the notice issue, Defendant argues that "[s]ubstantively, conditional certification of a *nationwide* collective class must be denied as Plaintiff fails to make the requisite showing that he and the putative collective class members are similarly situated, and were subject to a common plan or policy that violated the FLSA." *Id.* at 16 (emphasis in original). Regarding a showing that a common plan or policy violated the FLSA, the Defendant states that while "[i]t is not disputed that all Door Pro installers were compensated on a piece rate basis . . . [p]iece rate compensation is facially valid under the FLSA, and . . . Plaintiff must establish that the de facto implementation of the piece rate compensation plan was in violation of the FLSA." *Id.* According to Defendant, Plaintiff fails to do this.

Defendant also contends that Plaintiff is unable to show that he is similarly situated to other potential opt-in plaintiffs because the developed factual record establishes that there are sufficient differences between the compensation of Deer Park employees and employees in other locations. Specifically, Defendant asserts that "Deer Park installers were paid a higher per unit

rate than installers employed at other branches, and unlike the installers employed at other branches, received extra compensation for travel time based on the mileage travelled to job sites." *Id*. at 17.

Central to the Defendant's position, and occupying much of its Opposition Memorandum, is the Defendant's argument that since discovery is substantially complete, the appropriate burden which Plaintiff must satisfy is not the "modest" factual showing which courts apply when evaluating the typical, pre-discovery conditional certification motion, but rather is the more demanding standard used by courts on post-discovery motions for *decertification*. *See id*. at 17-28. Defendant asserts that "[w]ith the exception of the EZ Pass records and the documents responsive to the Third Demand for Production of Documents, there are no outstanding discovery requests to the Defendant." Def.'s Opp'n. at 5. In support of its position that an examination of the developed factual record precludes Plaintiff from meeting a more demanding standard, Defendant states that

> [c]ontrary to Plaintiff's unsupported assertions, the testimony of Jason Anderson establishes that the compensation paid to installers was very much tied to the number of hours worked, and that by annotation of the run sheets, the number of hours worked were tracked and recorded. The compensation paid to installers was tied to the number of hours worked by the per unit compensation plan – every "extra" that required more labor time resulted in an additional "per unit" payment to the installer. . . As Anderson aptly testified to, "the more jobs an installer completes, the more money he earns."

*Id*. at 27. Defendant does not refer to or cite the underlying record for this purported evidence, and, as the Court discusses *infra*, Plaintiff takes issue with these assertions.

As to a notice period, Defendant argues that because, "[i]n actuality, there is a very small universe of potential opt-in plaintiffs subject to the NYLL six-year statute of limitations," a three rather than six-year notice period is appropriate. Def.'s Opp'n. at 29.

8

### 3.      *Plaintiff's Reply*

In his Reply Memorandum, Plaintiff begins by stating that Defendant's representations regarding the testimony of Jason Anderson, as quoted *supra*, are "materially false and contradict the testimony of Dean Dum, Defendant's CFO, Jason Anderson, the branch manager of Defendant's Deer Park location, and Defendant's January 4, 2017 supplemental discovery response, which was authored and signed by Defendant's counsel."  Plaintiff's Memorandum in Reply ("Pl.'s Reply") [DE 65] at 1.  Elaborating on this point, Plaintiff states that

> Mr. Dum specifically testified at his deposition that the "run sheets" do not reference hours worked or hours in the field.  (*See* Exhibit '2', p. 32).  Mr. Dum also testified that Defendant did not keep track of the hours worked by its technicians.  (*See* Exhibit '2', p. 32).  Finally, Mr. Dum testified that the same system used in Deer Park with respect to piece-rate compensation and failing to track hours worked by technicians was utilized nationwide, without any deviation.  (*See* Exhibit '2', p. 33).  Additionally, Mr. Anderson confirmed that for the entire duration of his employment, Defendant has not kept track of every hour technicians have worked.  (See Exhibit '1', p. 77).  In fact, Mr. Anderson testified with specificity and in detail that Defendant did not keep track of the hours worked by Mario Montenegro and Julio Martinez, two technicians employed at Defendant's Deer Park Location.

*Id*. at 1-2.  In further support of his position, Plaintiff points to Defendant's response to Plaintiff's interrogatory number (2), in which Defendant states that it

> did not track Plaintiff's time worked or the number of hours worked as Plaintiff was not paid according to the number of hours worked, but instead was paid per work order completed. . . . With Plaintiff's travel time between job sites and ability to take break period[s] when he wanted, and with no set schedule of hours for the Plaintiff to work, it would not have been possible to track the number of hours the Plaintiff worked.  Nor was it necessary to track the number of hours worked as Plaintiff was paid per "unit", i.e., per work order completed.

*Id.* at 2.

The remainder of Plaintiff's Reply Memorandum contends "the record proves that Plaintiff and all other individuals working as 'Installers' and 'Technicians' were each subject to the same piece-rate compensation scheme regardless of the number of hours worked."  Pl.'s Reply at 3.  Conceding that piece-rate compensation is not facially unlawful under the FLSA, Plaintiff nonetheless argues that "Defendant's piece-rate compensation method is *de facto* illegal by manner of its implementation. . . . [B]ecause [Defendants] failed to record the hours of 'Installers' and 'Technicians,' and similarly failed to provide them with earned overtime compensation."  *Id.* at 6.

## III.   LEGAL STANDARD

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover  . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages.  *Id.*; *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011); *Bifulco v. Mort. Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'"  *Bifulco*, 262 F.R.D. at 212 (citations omitted).

### A. Traditional Two-Step Analysis

Courts within the Second Circuit generally apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. *See Myers v. Hertz Corp.*, 624 F.3d 537, 544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a two-step method" for analyzing collective action certification); *Alvarez v. IBM Restaurants Inc.*, 839 F. Supp. 2d 580, 583 (E.D.N.Y. 2012); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at *2 (E.D.N.Y. July 23, 2015); *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013). First, the court determines whether the proposed class members are "similarly situated." *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012); *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008); *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court decides in the affirmative, then conditional certification is granted, and the proposed collective members must consent in writing to be bound by the result of the suit, or "opt-in." *McGlone*, 867 F. Supp. 2d at 442; *see* 29 U.S.C. § 216(b). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are actually similarly situated. *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011); *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (quotations omitted).

When undertaking the first step of the analysis -- that is, for purposes of conditional certification, whether a plaintiff and proposed opt-in plaintiffs are "similarly situated" -- "the evidentiary standard is lenient." *Rubery*, 569 F. Supp. 2d at 336. At this stage, plaintiffs need

only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)); *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (noting that at the initial certification stage, courts do not require proof of an actual FLSA violation, "but rather that a 'factual nexus' exists between the plaintiff's situation and the situation of other potential plaintiffs."); *see, e.g.*, *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008); *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009). "[C]ourts typically decide the question of preliminary certification—not having the benefit of full discovery—'based on the pleadings, affidavits and declarations submitted by the plaintiff.'" *Korenblum v. Citigroup, Inc.*, 195 F. Supp. 3d 475, 480 (S.D.N.Y. 2016) (quoting *Ji v. Jling Inc.*, No. 15-CV-4194, 2016 WL 2939154, at *3 (E.D.N.Y. May 19, 2016)).

"[A]lthough the burden on the plaintiff at this preliminary stage is modest, 'it is not non-existent.'" *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 694 (N.D.N.Y. 2015) (quoting *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)). As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05 CIV. 2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

However, at the first stage, the standard of proof should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist." *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553. With this in mind, courts have routinely found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify [a] class." *Hernandez v. NGM Mgmt. Grp. LLC*, No. 12 CIV. 7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013) (collecting cases); *see Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the affidavit of one named plaintiff "met the minimal burden at this preliminary stage of demonstrating that [the plaintiffs] were subject to a common policy or practice and were 'similarly situated' to one another and to potential opt-in plaintiffs"); *Kemper v. Westbury Operating Corp.*, No. CV 12-0895, 2012 WL 4976122, at *2 (E.D.N.Y. Oct. 17, 2012) (granting conditional certification for overtime claims based on affidavit of the named plaintiff); *Khamsiri v. George & Frank's Japanese Noodle Rest. Inc.*, No. 12 CIV. 265, 2012 WL 1981507, at *1 (S.D.N.Y. June 1, 2012) (granting motion for conditional certification based on declaration by the plaintiff "confirming that she and other non-exempt employees employed by defendants in tipped positions, who performed work similar to hers, were, *inter alia*, paid less than the statutory minimum wage and not paid overtime pay") (citing *Bowens v. Atlantic Maintenance Corp.*, 546 F. Supp. 2d 55, 82 (E.D.N.Y. 2008)); *Wraga*, 2006 WL 2443554, at *2 (granting motion to certify collective action based on single plaintiff's affidavit alleging failure to pay overtime where he stated that he was aware, based upon personal conversations, of approximately 18 other employees who were subject to the same policies); *see also Doucoure*,

554 F. Supp. 2d at 373 (permitting preliminary certification where plaintiff offered his complaint which contended that he routinely worked in excess of forty hours per week, the defendant failed to pay him overtime, and there were similarly situated hourly employees also denied overtime).

Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and that "a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *Rodolico*, 199 F.R.D. at 481 (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (stating that a collective action under the FLSA "is different than a typical class action under the Federal Rules of Civil Procedure, the strict requirements of which – numerosity, commonality, typicality, and adequate representation – do not apply to a collective action").

### B.       Whether a Hybrid Standard Exists

Defendant asserts that since discovery has yielded a factual record, Plaintiff must satisfy a heightened factual burden akin to the second-step analysis in which courts usually engage post-discovery. *See* Def.'s Opp'n. at 17-28. While the traditional two-step approach for pre-discovery conditional certification motions is well established in the Second Circuit, "[w]here, as here, a conditional certification motion is made after some, but not all, discovery has occurred, it remains an open question whether some kind of 'intermediate' scrutiny should apply." *Korenblum v. Citigroup*, 195 F. Supp. 3d 475, 480-81 (S.D.N.Y. 2016). In *Korenblum v. Citigroup*, the district court for the Southern District of New York encountered a similar set of circumstances as those presented by the instant motion. The court in *Korenblum* conducted an in-depth survey of Second Circuit case law addressing motions for conditional certification

which were brought after at least some discovery had been conducted, and observed the following:

> Several district courts in other Circuits have reasoned that the degree of scrutiny applied should increase in proportion to the discovery that has been conducted. By and large, however, district courts in this Circuit have expressly declined to apply any increased scrutiny until discovery closes *in full*. Indeed, the trend in this Circuit at least *appears* to have solidified into rather strict adherence to either of two standards of review.

> Closer scrutiny, however, reveals that there is less consensus within the Circuit than might appear at first blush. First, even where courts in this Circuit have ostensibly declined to increase scrutiny after some discovery has taken place, they have considered the evidence obtained in discovery. In doing so, however, such courts are, at least tacitly, applying a more stringent test than the one stage-one test, which can be satisfied by little more than plaintiffs' *ipse dixit* statements in pleadings or declarations. Second, courts have either applied, or expressly remained open to applying, second-stage scrutiny in the first instance when discovery has been completed. At a minimum, the practice is an acknowledgment that discovery from opt-ins themselves is not necessarily needed to evaluate whether putative collective members are sufficiently similarly situated— and, more generally, reflects a flexible approach to what constitutes efficient use of the notification process.

*Id*. at 481 (emphasis in original) (citations omitted). After its inquiry, the court in *Korenblum* chose to "apply a modest plus standard . . . . In particular, and as an initial matter, the Court will look beyond the pleadings and affidavits submitted by Plaintiffs and will consider the evidence submitted by both parties, albeit with an understanding that the body of evidence is necessarily incomplete." *Id.* at 482 (citations and quotations omitted).[2]

---

[2] Significantly, in *Korenblum*, discovery with respect to conditional certification had been completed at the time of the motion for conditional certification. *See Korenblum*, 195 F. Supp. 3d at 482. In the case at bar, there is no indication that discovery with respect to the potential opt-in plaintiffs has been completed, or even started. Indeed, the scope of discovery with respect to conditional certification is one basis for Defendant's objections, indicating that no such discovery has likely taken place. *See* Def.'s Opp'n. at 15 ("Nothing in the Complaint or Amended Complaint speaks to the existence of branches in other states, much less puts

After careful consideration of the circumstances underlying the instant motion, this Court determines that under either the traditional "modest" first-stage burden, or some heightened burden based on the logic of *Korenblum* and the cases that decision cites, Plaintiff's motion for conditional certification puts forward a sufficient showing that Plaintiff and potential opt-in plaintiffs are "similarly situated," as discussed in greater detail below.

## IV.  DISCUSSION

### A.    Conditional Certification

Plaintiff seeks conditional certification as to the following group:

> [A]ll individuals employed by Defendant in the position of an "Installer" or "Technician." This proposed collective is nationwide. It includes employees from Defendant's locations in the states of New York, California, New Jersey, Washington, Oregon, Colorado, New Jersey, [*sic*] Illinois, Maryland, and Virginia, because there is evidence confirming that Defendant systematically denied earned overtime wages to its installers, all of whom work on a piece-rate basis.

Pl.'s Mem. at 1.  As noted, Plaintiff asserts that he has sufficiently shown that he and the potential opt-in collective members are "similarly situated" in that they were all subject to a single, unlawful policy.  *Id*. at 9.  According to Plaintiff's counsel, "[t]he single policy here is that Defendant elected to pay their 'Technicians' and 'Installers' on a piece rate basis regardless of the number of hours the employers actually worked.  (*See* Ex. 4, p. 3).  Accordingly, each 'Technician' or 'Installer', irrespective of geographic location, is similarly situated to Plaintiff, and is therefore be [*sic*] eligible for class certification."  *Id.*  In moving for conditional certification, Plaintiff relies on portions of the deposition transcripts of Jason Anderson,

---

Defendant on notice that after the close of discovery, Plaintiff would seek to expand the scope to include branches in eight states, requiring an entirely new round of discovery that would include deposition of opt-in plaintiffs spread across the country in seven other states.").

Defendant's Deer Park branch manager, and Dean Dum, Defendant's CFO, as well as Defendant's discovery responses and Plaintiff's own affidavit. *See* Zabel Decl. ¶¶ 2-5 and Exs. 1-4; Pl.'s Reply, Exs. 1-4.

An independent examination of the information on which Plaintiff relies reveals to the Court that Plaintiff has plausibly shown the following: (1) Plaintiff regularly worked no fewer than 55 hours per week Monday through Friday, and no fewer than 65 hours per week on weeks where he was required to work on Saturday, *see* Affidavit of Plaintiff Johnny Thornburn in Support of Plaintiff's Motion for Conditional Certification ("Thornburn Aff."), annexed to the Zabell Decl. as Ex. 2 [DE 64-4] ¶ 12; (2) Plaintiff was paid on a "piece-rate" basis, *see* Excerpts of the Transcript of the Jason Anderson Deposition ("Anderson Tr."), annexed to the Zabell Decl. as Ex. 1 [DE 64-3] at 17:16; Thornburn Aff. ¶ 13; (3) "Plaintiff was not paid by the number of hours worked, and instead was paid per work order completed. . . . As Plaintiff was not paid according to the number of hours worked, but instead per work order completed, there were no overtime hours," Defendant's January 1, 2014 Amended Response to Plaintiff's Interrogatory No. 1(f) ("Am. Response"), annexed to the Zabell Decl. as Ex. 4 [DE 64-6] at 3; Thornburn Aff., ¶¶ 13-14; (4) "Defendant did not track Plaintiff's time worked or number of hours worked," Am. Response to Interrogatory No. 2 [DE 64-6] at 3; (5) Plaintiff's payroll was issued from Defendant's home office in Virginia, *see* Excerpts of the Transcript of the Dean Dum Deposition ("Dum Tr."), annexed to the Zabell Decl. as Ex. 2 [DE 65-3] at 19:4-5; (6) Defendant does not keep track of hours worked for "techs," and there is no reference to number of hours worked on a technician's "run sheet," *id*. at 32:14-16, 22-24; and (7) Defendant maintains this compensation system for technicians nationwide; there is no deviation in this practice from location to location. *Id*. at 33:3-9.

Based on the above information, the Court finds that under the lenient first-stage conditional certification analysis, Plaintiff has sufficiently made "a 'modest factual showing' that [he] and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261). While the FLSA permits piece-rate compensation, the actual *rate* under such a plan must bear a relationship to the number of hours worked in a given week. Indeed, the statute is quite clear on the nature of this relationship:

> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection—
>
> (1) in the case of an employee employed at piece rates, *is computed at piece rates not less than one and one-half times the bona fide piece rates applicable to the same work when performed during nonovertime hours*

29 U.S.C. § 207(g) (emphasis added). In order for "the amount paid to [an] employee" to be "computed at piece rates not less than one and one-half times the bona fide piece rates applicable to the same work when performed during nonovertime hours," an employer must track an employee's hours and be aware of what hours are "overtime" vs. "nonovertime." *See Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) ("In the case of piece work wages, th[e] regular rate coincides with the hourly rate actually received for all hours worked during the particular workweek, such rate being the quotient of the amount received during the week divided by the number of hours worked."); *Johnson v. Wave Comm GR LLC*, 4 F. Supp. 3d 423, 444 (N.D.N.Y. 2014) (noting that in the context of overtime wages under the FLSA, "[t]he

regular rate of pay is computed by taking an employee's total weekly earnings *divided by his total hours worked* during that week") (emphasis added).  The FLSA's concomitant regulations also make clear that the necessity that an employer track the number of hours worked per week applies with equal force to piece-rate workers:

> The [FLSA] takes a single workweek as its standard and does not permit averaging of hours over 2 or more weeks. . . . This is true regardless of whether the employee works on a standard or swing-shift schedule and regardless of whether he is paid on a daily, weekly, biweekly, monthly or other basis.  *The rule is also applicable to pieceworkers* and employees paid on a commission basis.  *It is therefore necessary to determine the hours worked and the compensation earned by pieceworkers* and commission employees on a weekly basis.

29 C.F.R. § 778.104 (emphasis added).

Plaintiff's evidentiary showing that Defendant neither tracked its technicians' hours nor compensated its technicians appropriately in connection with those hours, and that it failed to do so with respect to Plaintiff and all of Defendant's technicians nationwide, is sufficient to show that Plaintiff and other technicians were all subject to the same purportedly unlawful compensation plan, and are therefore "similarly situated" for purposes of conditional certification.

Under the traditional first-step analysis, it would not be proper for the Court to consider any evidentiary offering made by Defendant to rebut Plaintiff's showing.  *See Perkins v. S. New England Tel. Co.*, 669 F. Supp. 2d 212, 219 (D. Conn. 2009) ("The court notes that, in highlighting specific sections of deposition testimony . . . [Defendant] appears to be couching arguments about the merits of the [] case[.]  [However], [a]t the certification stage, a court need not judge the merits of the plaintiffs' claims because they are irrelevant to the collective action inquiry, as long as plaintiffs assert a plausible basis for their claim.); *Garcia v. Four Bros. Pizza*,

No. 13 CV 1505, 2014 WL 2211958, at *6 (S.D.N.Y. May 23, 2014) (refusing to consider deposition testimony that would undermine plaintiff's FLSA claims at the conditional certification stage since "the Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here") (internal quotations and citation omitted); *see also Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 633 (S.D.N.Y.2007); *Indergit v. Rite Aid Corp.*, Nos. 08 CIV 9361, 08 CIV 11364, 2010 WL 2465488, at *4 (S.D.N.Y. June 16, 2010) ("[T]he court does not resolve factual disputes, decide ultimate issues on the merits, or make credibility determinations.") (internal citation omitted); *Stevens v. HMSHost Corp.*, No. 10 Civ. 3571, 2012 WL 4801784, at *3 (E.D.N.Y. Oct. 10, 2012) (recognizing that defendant's submission of declarations of current employees "cannot be used to undermine a plaintiff's initial showing because doing so would require a court to weigh evidence and determine credibility, which is not appropriate until the second stage after discovery") (citing *Ferreira v. Modell's Sporting Goods, Inc.*, No. 11 Civ. 2395, 2012 WL 2952922, at *3 (S.D.N.Y. July 16, 2012)); *Bates v. Valente Landscaping, Inc.*, No. 14 Civ. 1434, 2014 WL 2111080, at *1 (E.D.N.Y. May 21, 2014) (noting that court is not to "resolve factual disputes, decide substantive issues going to the merits, or make credibility determinations" during the first step in the certification process) (internal quotations and citation omitted); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 665 (S.D.N.Y. 2013) ("[T]he Court at this point does not weigh the evidence or speculate concerning plaintiffs' ultimate ability to succeed on the merits.") (internal quotations omitted).  Normally, the analysis would conclude here, and Plaintiff's action would be conditionally certified as a collective action.

However, the Court observes that even under some sort of heightened evidentiary standard of the kind advocated by Defendant, Plaintiff is still able to make a sufficient showing.

The Court draws this conclusion based on Defendant's failure to offer any evidence to effectively rebut Plaintiff's assertions that Door Pro did not track its technicians' hours or compensate its technicians appropriately in accordance with those hours. Defendant asserts that "[c]ontrary to Plaintiff's unsupported assertions, the testimony of Jason Anderson establishes that the compensation paid to installers was very much tied to the number of hours worked, and that by annotation of the run sheets, the number of hours worked were tracked and recorded." Def.'s Opp'n. at 27. Yet, Defendant fails to provide any citation to the record to support this assertion. Indeed, Plaintiff takes direct issue with these representations, calling them "materially false" and arguing that they "contradict the testimony of Dean Dum, Defendant's CFO, Jason Anderson, the branch manager of Defendant's Deer Park location, and Defendant's January 4, 2017 supplemental discovery responses, which was authored and signed by Defendant's counsel." Pl.'s Reply at 1. In light of the evidence reviewed by the Court, *supra*, it appears to be Defendant's, rather than Plaintiff's assertions, that are lacking in evidentiary support.

Defendant's remaining arguments against conditional certification are similarly unavailing. Defendant contends that "it is material that the Deer Park installers are *not* similarly situated as installers from branches in other states in terms of the compensation paid. The Deer Park installers were paid a higher per unit rate than installers employed at other branches, and unlike the installers employed at other branches, received extra compensation for travel time based on mileage travelled to job sites." Def.'s Opp'n. at 16-17, 27-28 (emphasis in original). However, Defendant fails to explain how regional differences in *levels* of compensation negate the otherwise similar factors between employees in a system which is uniform in the aspect that purportedly brings it afoul of the FLSA, namely, the failure to track hours worked or to appropriately tie piece-rate compensation to those hours. Indeed, differences in levels of

regional compensation in an otherwise uniformly unlawful system appear to be akin to those superficial differences that courts in this Circuit generally do not credit when determining whether conditional certification is appropriate. *See Guaman v. 5 M Corp.*, No. 13 CIV. 03820, 2013 WL 5745905, at *4 (S.D.N.Y. Oct. 23, 2013) ("In the Second Circuit, courts routinely find employees similarly situated despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.") (quotations omitted); *Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508, 517 (E.D.N.Y. 2011) ("It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs." (alteration and quotation marks omitted)); *see also Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203, 2013 WL 8367807, at *4 (E.D.N.Y. Sept. 19, 2013) (granting conditional certification where the plaintiffs "submitted evidence which suggests that the allegedly improper overtime policy was not limited to banquet servers, but rather was applied to all service employees").

Accordingly, the Court finds that Plaintiff has met his burden to show that he and the proposed members of the collective -- all individuals employed by Defendant in the position of "Installer" or "Technician" -- are "similarly situated." *See McGlone*, 867 F. Supp. 2d at 442; *Rubery*, 569 F. Supp. 2d at 336. The Court therefore GRANTS Plaintiff's motion for conditional certification of the collective.

### B.    Opt-In Notice Period

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). Plaintiff asserts in his Complaint that Defendant's violations of the FLSA were willful. *See, e.g.*, Am. Compl. ¶ 54.

However, Plaintiff asks this Court for a six-year notice period because the state law claims brought in this action, over which this Court may exercise supplemental jurisdiction, have a six-year limitations period.  Pl.'s Mem. at 10-12; *see* 28 U.S.C. § 1367.  "Courts in this Circuit are split on the appropriateness of adopting the NYLL's [six-year] limitations period for the purpose of sending FLSA notice to a group of opt-in plaintiffs." *Bhumithanarn v. 22 Noodle Mkt. Corp.,* No. 14-CV-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (quoting *Gaspar v. Personal Touch Moving, Inc.,* No. 13-CV-8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)).  In the Court's view, a notice period of three years is appropriate in this case, especially since Plaintiff is seeking nationwide certification.  *See Bhumithanarn*, 2015 WL 4240985, at *6 (adopting a three-year limitation period "[w]here counsel has merely amended its complaint and has not asserted that it will later seek certification of a NYLL class, much less prevail on a Rule 23 motion"); *Gaspar*, 2014 WL 4593944, at *7 ("Nor is the Court convinced that a FLSA opt-in notice is an appropriate venue for 'shedding light' on the suitability of certifying a NYLL class action later on.  An FLSA notice should inform opt-in plaintiffs of their right to bring FLSA claims, not advance counsel's tangential interest in certifying a class of NYLL plaintiffs who (in some cases) *cannot* bring FLSA claims.") (citing *Trinidad*, 962 F. Supp. 2d at 564) (emphasis in original).

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order or the notice since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action.  *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013).  "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the

understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'" *Gaspar*, 2014 WL 4593944, at *7 (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14) (internal alteration omitted); *see, e.g.*, *Hamadou*, 915 F. Supp. 2d at 668; *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli*, 883 F. Supp. 2d at 356; *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011). The Court therefore concludes that "the remedial purposes of the FLSA are best served" here by applying the three-year statute of limitations from the date of the filing of the Complaint in this action. *Fa Ting Wang*, 2015 WL 4603117, at *13; *Guzelgurgenli*, 883 F. Supp. 2d at 357 ("In light of potential issues with equitable tolling, the Court agrees that, in an abundance of caution, the notice should be sent to all relevant employees" for the period running from the date of filing of the complaint.) (citing *Whitehorn*, 767 F. Supp. 2d at 451); *see Trinidad*, 962 F. Supp. 2d at 564 (granting conditional certification for non-exempt employees who worked for the defendant from three years prior to the filing of the amended complaint). Thus, FLSA conditional certification in this action is limited to claims arising from July 11, 2013, to the present.

Based on the foregoing analysis, the Court grants conditional certification to the opt-in class proposed by Plaintiffs. The Court designates the members of the collective as follows:

> All individuals employed by Door Pro America, Inc., as "Installers" or "Technicians," in Door Pro America's locations in New York, California, New Jersey, Washington, Oregon, Colorado, Illinois, Maryland, and Virginia, since July 11, 2013.

### C.    Discovery of Identifying Information

Plaintiff requests that the Court direct Defendants to furnish the names, last known physical addresses, and last known telephone numbers of potential collective members. *See* Pl.'s Mem. at 1. As to this request, Defendant has "no objection to producing names and addresses

for installers employed at Deer Park three years prior to the date of the mailing of the notice. Defendant however does not maintain records of phone numbers for employees, and cannot produce that information."  Def.'s Opp'n. at 35.

"In general, it is appropriate for courts in collective actions to order the discovery of names, addresses, telephone numbers, email addresses, and dates of employment of potential collective members."  *Velasquez v. Digital Page, Inc.*, No. 11-CV-3892, 2014 WL 2048425, at *15 (E.D.N.Y. May 19, 2014) (citing *Puglisi v. TD Bank, N.A.*, No. 13 Civ. 00637, 998 F. Supp. 2d 95, 2014 WL 702185, at *6 (E.D.N.Y. Feb. 25, 2014) ("In regard to requests for names, last known addresses, telephone numbers (both home and mobile), e-mail addresses, and dates of employment, courts often grant this kind of request in connection with a conditional certification of an FLSA collective action.") (internal quotations and citations omitted); *Rosario,* 828 F. Supp. 2d at 522 ("The Court finds the disclosure of potential opt-in plaintiffs' names, last known addresses, telephone numbers, and dates of employment to be appropriate."); *In re Penthouse Executive Club Comp. Litig.*, No. 10 Civ. 1145, 2010 WL 4340255, at *5-6, (S.D.N.Y. Oct. 26, 2010) (finding the disclosure of names, addresses, telephone numbers, and dates of employment to be "essential to identifying potential opt-in plaintiffs")); *see, e.g.*, *Fa Ting Wang*, 2015 WL 4603117, at *14 (collecting cases from the Eastern and Southern Districts of New York).

Accordingly, the Court is directing Defendant to provide Plaintiff's counsel, in a standard electronic format, a list of the names, last known physical addresses, and last known telephone numbers (to the extent that Door Pro has any telephone numbers) for all potential collective members employed by Defendant during the relevant time period.  The list is to be furnished within 14 days of the entry of this Order and is to be treated by the parties as confidential.  To the extent Door Pro claims it does not or did not maintain telephone numbers for these employees,

the Court is directing that a Door Pro representative with first-hand knowledge provide the Court and Plaintiff's counsel with an affidavit confirming that this is the case, and, if so, why it is the case. The affidavit is to be filed within 14 days of this Order. The parties are directed to enter into a Stipulation and Order of Confidentiality which includes this information if they have not already done so. If Plaintiff is unable to effectuate notice on some potential opt-in plaintiffs with the information that is produced, Plaintiff may submit a written request to the Court to obtain further information for the potential opt-in plaintiffs.

### D. Form of Notice of Pendency and Consent to Join Form

Plaintiff has not provided the Court with a proposed Notice of Pendency and Consent to Join form. Defendant "reserves the right to make objections to Plaintiff's proposed Notice and proposed Consent to sue when provided by Plaintiff's counsel." Def.'s Opp'n. at 35. The Court directs counsel for both sides to engage in an immediate meet-and-confer to create an agreed upon Notice and Consent form. These forms are to be submitted to the Court within 21 days of this Order. Counsel are encouraged to review the Court's prior decisions regarding proposed Notice and Consent forms as part of their meet-and-confer. *See, e.g.*, *Velasquez v. Digital Page*, No. CV 11-3892, 2014 WL 2048425, at *9-15 (E.D.N.Y. Jul. 25, 2014); *Sharma v. Burberry Ltd.*, 52 F.Supp.3d 443, 461-66 (E.D.N.Y.2014). To the extent there are any objections remaining after the meet-and-confer, counsel are directed to submit a redline version of the proposed Notice and Consent form for review and determination by the Court.

### E. Opt-In Period

Plaintiff does not request a specific opt-in period, nor has Defendant addressed the issue. "[A] 60–day notice period for potential plaintiffs is common practice under the FLSA." *Cohan*, 2013 WL 8367807, at *12 (collecting cases); *see, e.g.*, *Fa Ting Wang*, 2015 WL 4603117, at *11

("Courts in this Circuit 'routinely restrict the opt-in period to sixty days.'") (quoting *Velasquez*, 2014 WL 2048425, at *12) (collecting cases); *Whitehorn*, 767 F. Supp. 2d at 451-52. The Notice shall therefore reflect that opt-ins have 60 days to return the Consent to Join form to the Clerk of the Court.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED, subject to the limitations discussed herein. In sum, the Court certifies the following class:

> All individuals employed by Door Pro America, Inc., as "Installers" or "Technicians," in Door Pro America's locations in New York, California, New Jersey, Washington, Oregon, Colorado, Illinois, Maryland, and Virginia, since July 11, 2013.

The Court further orders that:

1. Within 14 days of entry of this Order, Defendant is to produce in a standard electronic format, a list of the names, last known physical addresses, and last known telephone numbers (to the extent available) for all potential collective members employed by Defendant during the relevant time period.

2. The parties are to engage in an immediate good faith meet-and-confer and submit an agreed upon Notice and Consent to Join form within 21 days of this Order. In the event there are objections remaining after the meet-and-confer, counsel are directed to submit a redline version of the proposed document forthwith for review and determination by the Court.

**SO ORDERED.**

Dated: Central Islip, New York
         March 20, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge