UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
JOHNNY THORNBURN, individually and on
behalf of those individuals similarly situated,

                              Plaintiff,                     Case No.: 18-CV-03839 (DRH) (AKT)

       -against-

DOOR PRO AMERICA, INC.,

                             Defendant.
------------------------------------------------------------------------x

## SETTLEMENT AGREEMENT AND RELEASE

       This Settlement Agreement and Release (the "Agreement") is entered into by and between Plaintiff, Johnny Thornburn, individually and on behalf of the sixteen (16) Opt-In Plaintiffs who have consented to joining this litigation (collectively hereinafter "Plaintiff") (See Definition provided for in Section **1.9** below), and Defendant, Door Pro America, Inc. ("Defendant" or "Company" and, together with Plaintiff, the "Parties").

### *RECITALS AND BACKGROUND*

       WHEREAS, the Plaintiff filed a Collective Action Complaint on July 11, 2016, in which claims were asserted against Defendant pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") for, *inter alia*, the alleged failure to pay employees overtime compensation and damages for failure to provide accurate wage notices or wage statements;

       WHEREAS, the purpose of this Agreement is to settle fully and finally all Released Claims (as defined below in Section 1.12) between the Parties, including all claims asserted or alleged in *Johnny Thornburn v. Door Pro America, Inc.*, Eastern District of New York, Case No.: 16-CV-03839 (ADS)(AKT) (the "Litigation");

       WHEREAS, Defendant denies all of the allegations made by Plaintiff in the Litigation and deny any and all liability and damages to anyone with respect to the alleged facts or claims asserted in the Litigation;

       WHEREAS, the Parties have exchanged certain discovery and conducted several depositions relevant to the Litigation;

       WHEREAS, without admitting or conceding any liability or damages whatsoever, and without admitting that wages were improperly calculated, withheld, or paid with respect to any employees and without admitting any allegations or claims made by or on behalf of Plaintiff in the

0

Litigation, Defendant has agreed to settle the Litigation on the terms and conditions set forth in this Agreement to avoid the burden, expense, and uncertainty of continuing the Litigation; and,

WHEREAS, Plaintiff's Counsel has analyzed and evaluated the merits of the claims made against Defendant in the Litigation, and the impact of this Agreement on Plaintiff and, based upon an analysis and evaluation of a number of factors, and recognizing the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might result in no recovery or a recovery that is less favorable to Plaintiff and that might not occur for several years, Plaintiff's Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the best interest of Plaintiff.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation on the following terms and conditions:

**1. *DEFINITIONS***

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**1.1** **Agreement.** "Agreement" means this Settlement Agreement and Release.

**1.2** **Collective/Class Action Waiver.** "Collective/Class Action Waiver" for Plaintiff means if any claim is not part of the Released Claims (defined in Section 1.14 below), to the extent permitted by law, Plaintiff waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action, grievance or proceeding based on such a claim in which Defendant is a party and all monies paid hereunder shall be set-off in full against any relief or recovery of any kind without apportionment.

**1.3** **Court.** "Court" means the United States District Court for the Eastern District of New York, the Honorable Denis R. Hurley, Senior U.S.D.J., presiding.

**1.4** **Days.** "Days" means consecutive calendar days.

**1.5** **Defendant's Counsel.** "Defendant's Counsel" refers to Michael K. Chong, Esq. of The Law Offices of Michael K. Chong, 2 Executive Dr., Suite 720, Fort Lee, New Jersey 07024.

**1.6** **Effective Date.** "Effective Date" of the Settlement means the day the Court has entered an Approval Order approving this Agreement.

**1.7** **Approval Order.** "Approval Order" means an Order entered by the Court approving this Agreement.

**1.8** **Litigation.** "Litigation" means the above-captioned civil action.

**1.9** **Plaintiff.** The term "Plaintiff" as defined in this Agreement means collectively Johnny Thornburn, individually and the sixteen (16) Opt-In Plaintiffs who have consented to joining this litigation.

1

<u>The Sixteen (16) Opt-in Plaintiffs are:</u>

    (i)     "John Alford";

    (ii)    "Michael Bennett";

    (iii)   "Luis Centeno Ortiz";

    (iv)   "David Eastman";

    (v)    "Richard Gastelum";

    (vi)   "Tony Guise";

    (vii)   "Jay Hanley";

    (viii)  "Marton Keszthelyi";

    (ix)   "William Lafaber";

    (x)    "Eli Lopez";

    (xi)   "Otoniel Martinez Lemus";

    (xii)   "Luis Mendez";

    (xiii)  "Mauro Navarro";

    (xiv)  "Rodney Parker, Jr.";

    (xv)   "Angel Ramirez"; and

    (xvi)  "Michael Zimmerman."

**1.10** **Net Settlement.** "Net Settlement" means the balance of the Settlement Amount (as defined below in Section 1.16) remaining after deductions for Court-approved attorneys' fees and costs and expenses for Plaintiff's Counsel as set forth below in Section 3.3.

**1.11** **Plaintiff's Counsel.** "Plaintiff's Counsel" refers to Saul D. Zabell, Esq. and Ryan M. Eden, Esq. of Zabell & Associates, P.C., 1 Corporate Drive, Suite 103, Bohemia, NY 11716, (631) 589-7242.

**1.12** **Released Claims.** "Released Claims" means any and all claims asserted in the Complaint (or that could have been asserted) under federal, state or local law on behalf of Plaintiff that arose any time during the period of time from the first date that such individual worked for any Defendant through the date of this Agreement, that relate to or otherwise concern compensation, minimum wages, overtime, spread-of-hours, unpaid tips, wage statement or wage notice including all such claims under the Fair Labor Standards Act, New York Labor Law, and any other federal, state or local law or common law or equitable principles

2

directly or indirectly relating to failure to compensate or pay wages, overtime wages, minimum wages, or spread-of-hours pay, tips, wage notice, wage statement, liquidated damages, interest, penalties, and attorneys' fees and costs or expenses of any nature related to such claims for periods of time in which the Plaintiff worked for Defendant.

**1.13** **Relevant Statutory Period.** The "Relevant Statutory Period" means the period from July 11, 2013 through the date of this Agreement.

**1.14** **Settlement.** "Settlement" means the terms set forth in this Agreement.

**1.15** **Settlement Amount.** "Settlement Amount" means the gross sum of Eight Hundred Thousand Dollars ($800,000.00), which Defendant agrees to pay for the Settlement of the Litigation, subject to the terms of this Agreement.

**2.** ***INITIAL PROCEDURAL ISSUES***

**2.1** **Binding and Irrevocable Agreement.** This Agreement is a binding and irrevocable agreement and contains all material agreed-upon terms for the Parties to seek the full and final settlement of the Litigation.

**2.2** **Settlement Approval Motion.**

(A) Plaintiff's Counsel will promptly submit to Defendant's Counsel for the latter's comment and approval a proposed Motion for Settlement Approval ("Approval Motion"). Plaintiff's Counsel will allow Defendant an opportunity to review the terms of the proposed Approval Motion. Defendant's Counsel will review these documents to ensure that they are consistent with this Agreement and the intended Settlement, and if they are not, Plaintiff's Counsel will revise them as reasonably requested by Defendant's Counsel to make them consistent, and the Approval Motion shall be filed Jointly by the Parties.

(B) Plaintiff and his counsel, acting on behalf of the Collective Class, submits the Approval Motion on behalf of each Opt-In Plaintiff, each of whom has provided written authorization for Zabell & Associates, P.C. to act on his behalf in all matters relating to this action, including any settlement of his respective claims. Should this Court Approve the Settlement Agreement and find that its terms are fair and reasonable, it shall be a condition precedent that each Opt-In Plaintiff must execute this agreement in its entirety to receive his portion of the Settlement Amount delineated below in Paragraph 3.1(C).

(C) In the Approval Motion, Plaintiff's Counsel will request the Court (1) approve the Settlement as fair, adequate and reasonable; and (2) award Plaintiff's Counsel fees and costs and expenses.

(D) If the Court denies the Approval Motion, unless the Parties jointly agree to seek reconsideration of the ruling or to seek Court approval of a renegotiated settlement, the Litigation will resume as if no settlement had been attempted or reached, subject to the Court's discretion, and the Settlement Amount will be

3

immediately returned to Defendants. In such event, Defendant retains the right to contest any allegation of fact or claim of any nature made in the Litigation at any time, including but not limited to whether the Litigation should be maintained as a class action and/or a collective action and to fully contest the merits of the claims being asserted in the Litigation.

(E) The Parties will work together, diligently and in good faith, seeking to expeditiously obtain Approval of the Motion for Settlement and Dismissal of the Litigation with prejudice.

## 3. *SETTLEMENT TERMS*

### 3.1 Settlement Amount.

(A) Subject to the terms of this Agreement, Defendant agrees to pay a gross total Settlement Amount of Eight Hundred Thousand Dollars ($800,000.00), to be paid in connection with the Settlement.

(B) On or about November 20, 2018, Defendant transferred the Settlement Amount of $800,000.00 to Plaintiffs' counsel via wire transfer to the Attorney IOLTA account of Plaintiff's counsel, where the funds will be held in escrow pending the Court's approval of the Settlement. Plaintiffs' counsel has confirmed receipt of the Settlement Amount. If the Settlement is not approved, and the Parties elect to proceed with litigation, the Settlement Amount will be immediately returned to Defendant, and the Litigation will continue as provided for in Section 2.2 (C).

(C) If the Settlement is approved by the Court, then Plaintiffs' counsel will issue payment and distribute the Settlement funds as follows, with execution of this agreement by each respective Opt-In Plaintiff a condition precedent for issuance of payment and distribution to each respective Opt-In Plaintiff:

- A check made payable to "Johnny Thornburn" in the amount of One Hundred Five Thousand Seven Hundred Sixty Dollars and Seventy Cents ($105,760.70) for which a form 1099 will be issued.
- A check made payable to "John Alford" in the amount of Three Thousand Two Hundred Forty Dollars and Fifty-Five Cents ($3,240.55) for which a form 1099 will be issued.
- A check made payable to "Michael Bennett" in the amount of "Thirty-Six Thousand Seven Hundred Seventy-Eight Dollars and Eighty Seven Cents ($36,778.87) for which a form 1099 will be issued.
- A check made payable to "Luis Centeno Ortiz" in the amount of Nine Thousand Four Hundred Seventy-Three Dollars and Thirty Two Cents ($9,473.32) for which a form 1099 will be issued.
- A check made payable to "David Eastman" in the amount of Four Thousand Two Hundred Eight Dollars and One Cent ($4,208.01) for which a form 1099 will be issued.

- A check made payable to "Richard Gastelum" in the amount of Forty-Two Thousand Seven Hundred Sixty-Eight Dollars and Forty-Nine Cents ($42,768.49) for which a form 1099 will be issued.
- A check made payable to "Tony Guise" in the amount of Thirty-Three Thousand Ninety-Eight Dollars and Eighty-Five Cents ($33,098.85) for which a form 1099 will be issued.
- A check made payable to "Jay Hanley" in the amount of Twenty-Two Thousand Eight Hundred Fifty-Nine Dollars and Thirty-Four Cents ($23,859.34) for which a form 1099 will be issued.
- A check made payable to "Marton Keszthelyi" in the amount of Seven Thousand Eight Hundred Sixty-Four Dollars and Fifty-Five Cents ($7,864.55) for which a form 1099 will be issued.
- A check made payable to "William Lafaber" in the amount of Two Thousand One Hundred Twenty-Five Dollars and Two Cents ($2,125.02) for which a form 1099 will be issued.
- A check made payable to "Eli Lopez" in the amount of Three Thousand Five Hundred Seventy-Two Dollars and Eighty-Seven Cents ($3,572.87) for which a form 1099 will be issued.
- A check made payable to "Otoniel Martinez Lemus" in the amount of Fifty-Three Thousand Five Hundred Forty-Seven Dollars and Seventy-One Cents ($53,547.71) for which a form 1099 will be issued.
- A check made payable to "Luis Mendez" in the amount of Forty-Two Thousand Six Hundred Sixty-Two Dollars and Sixty Eight Cents ($42,662.68) for which a form 1099 will be issued.
- A check made payable to "Mauro Navarro" in the amount of One Hundred Fourteen Thousand Four Hundred Twenty-Seven Dollars and Eighty-One Cents ($114,427.81) for which a form 1099 will be issued.
- A check made payable to "Rodney Parker, Jr." in the amount of Two Thousand Six Hundred Seventy-Five Dollars and Eighty-Two Cents ($2,675.82) for which a form 1099 will be issued.
- A check made payable to "Angel Ramirez" in the amount of Forty-Four Thousand Four Hundred Forty-Six Dollars and Twenty-Five Cents ($44,446.25) for which a form 1099 will be issued.
- A check made payable to "Michael Zimmerman" in the amount of Two Thousand Eight Hundred Eighty-Two Dollars and Fifty Cents ($2,822.50) for which a form 1099 will be issued.
- A check made payable to "Zabell & Associates, P.C" as attorneys fees' in the amount of Two Hundred Sixty-Six Thousand Six Hundred Sixty-Six Dollars and Sixty-Seven Cents ($266,666.67).

(D) Each Opt-In Plaintiff, contingent on the Opt-In Plaintiff's execution of this Agreement, will receive his share of the Settlement Amount delineated in Paragraph 3.1(C) above within forty-eight hours of the Approval Order. If any Plaintiff fails to take, accept or collect their portion of the Settlement Amount from Plaintiffs' counsel within six (6) months of the Effective Date of this Agreement, then that amount will be returned to Defendant. If any Opt-In Plaintiff

5

        fails and\or refuses to execute this agreement within six (6) months of the Effective Date of this Agreement, then the amount payable to that Opt-In Plaintiff pursuant to Section 3.1 (C) will be returned to Defendant.

(E) Plaintiff agrees and acknowledges that Defendant and Defendant's Counsel have not made any representations to Plaintiff regarding the tax consequences of any payments or amounts received by Plaintiff pursuant to this Agreement.

(F) Defendant shall provide Plaintiff with an IRS form 1099 in connection with the settlement payment of $800,000.00.

(G) <u>Indemnification</u>. Plaintiff and their Counsel shall be solely responsible for any taxes resulting from payments received under the Agreement, and in the event of an audit of Defendant by any taxing authority regarding payments to Plaintiff and their counsel, Plaintiff and their counsel will indemnify and hold Defendant harmless for any failure of Plaintiff or his counsel to pay taxes on any payments received from Defendant pursuant to this Agreement.

(H) <u>Withdrawal and Stipulation of Dismissal</u>. In exchange for the payments made to Plaintiff pursuant to the terms of this Agreement, the sufficiency of which is acknowledged, Plaintiff shall stipulate to dismissal of, in writing and with prejudice, the Litigation and all related allegations, claims, charges, actions, complaints, lawsuits, appeals, and proceedings that Plaintiff has instituted against Defendant. Plaintiff shall sign and deliver to Defendant's Counsel, as a condition to Plaintiff's entitlement to consideration under this Agreement, the proposed Stipulation of Dismissal with Prejudice to be So Ordered by the Court, attached to this Agreement as **Exhibit A**. Defendant's obligations under this Agreement are expressly conditioned on the Court's approval of this Settlement. Defendant will hold the executed Stipulation of Dismissal with Prejudice in physical escrow which will only be filed with the Court after the Settlement proceeds listed in section 3.1(A) have been disbursed and cleared. Plaintiff's counsel shall notify Defendant's counsel in writing that the Settlement Proceeds listed in Section 3.1 (A) have been disbursed and cleared, and that Defendant's counsel may file the Stipulation of Dismissal with Prejudice with the Court.

## 3.2 Default

(A) The parties hereto have confirmed that the Settlement funds of $800,000.00 have been transferred by Defendant to Plaintiff's Counsel's IOLTA trust account on or about November 21, 2018.

## 3.3 Settlement Amounts Payable as Attorneys' Fees and Costs.

(A) Plaintiff's Counsel will petition the Court for an award of attorneys' fees of no more than thirty-three and 1/3 percent (33 1/3%) of the Settlement Amount, and for reimbursement of their actual litigation costs and expenses up to a total of Two Hundred Sixty Six Thousand and Six Hundred And Sixty Six Dollars and Sixty Seven Cents ($266,666.67) to be paid from the Settlement Amount of

6

$800,000.00, for filing fees, process of service fees, postage costs, mediation costs, and attorneys' fees. Defendant supports Plaintiff's Counsel's application for attorneys' fees and costs.

**4.    RELEASE**

**4.1   Release of Claims.**

(A) By operation of the entry of an Order approving the this Agreement and Stipulation of Dismissal with Prejudice, and except as to such rights or claims as may be created by this Agreement, Plaintiff (Plaintiff, Johnny Thornburn, individually and the sixteen (16) Opt-In Plaintiffs who have consented to joining this litigation (collectively referred to in this Agreement as "Plaintiff"), forever and fully releases Defendant, its respective owners, members, stockholders, predecessors, successors, assigns, agents, directors, officers, employees, representatives, attorneys, parents, subsidiaries, affiliates, benefits plans, plan fiduciaries, and/or administrators, and all persons acting by, through, under or in concert with it from the Released Claims, as defined in Section 1.12 of this Agreement.

(B) Plaintiff hereby irrevocably and unconditionally releases, acquits, and forever discharges any federal or state wage and hour claims that they may have against Defendant in this action, and all claims asserted and alleged in the Complaint. Defendant agrees to release and discharge Plaintiff from all claims and liabilities in this action through the date of Defendant's execution of this Agreement.

**4.2   Denial of Liability / No Admission of Wrongdoing.**

This Agreement and compliance with this Agreement shall not be construed as an admission by Defendant of any liability whatsoever, or of any violation of any statute, regulation, duty, contract, right or order. Defendant has agreed to the terms of this Agreement without in any way acknowledging or admitting any fault or liability, and with the understanding that this Settlement will avoid the further expense and disruption of their business that could arise from the continued pendency of the Litigation. Nothing in this Agreement shall be deemed or used as an admission of liability or fact against Defendant concerning any claims in the Complaint, or as an admission that a collective action should be certified for any purpose.

**4.2   Mutual Non-Disparagement.**

Plaintiff agrees that he shall not make, or encourage any other individual to make, any public or private "disparaging" comments, including but not limited to written, verbal, or electric communications, about Defendant to any individual or entity and/or to take any action, directly or indirectly, that would "disparage" Defendant.

Defendant agrees not to make any disparaging comments about Plaintiff and to instruct their managerial employees not to make any disparaging comments about Plaintiff.

7

No portion of this section, or the agreement as a whole, shall constitute or be construed as a confidentiality provision or other restriction on either party to discuss the terms and conditions of the negotiated settlement agreement.

**4.3** **Response to Subpoena.**

Plaintiff agrees that, in the event he is subpoenaed by any person or entity (including, but not limited to, any government agency) to give testimony (in a deposition, court proceeding or otherwise) which in any way relates to the Defendant, his prior employment with Defendant, or to any subject matter relevant to the instant proceedings and the settlement of this matter, Plaintiff will give prompt notice of such request to Defendant and, if possible, will make no disclosure until Defendant has had a reasonable opportunity to contest the right of the requesting person or entity to such disclosure.

**4.4** **Return of all Property.**

Plaintiff represents that he has returned to Defendant all Company property and any "Company Information" including, without limitation, mailing lists, reports, client lists, employee lists, files, memoranda, records and software, computer, door and file keys, security access codes, computer access codes or disks and other physical or personal property which Plaintiff received, prepared or helped prepare, or otherwise came in contact with and that Plaintiff will not retain any copies, duplicates, reproductions or excerpts thereof. The term "Company Information" as used in this Agreement includes but is not limited to: (a) confidential information of the Company including, without limitation, information received from third parties under confidential conditions; and (b) other financial information or trade secrets, the use or disclosure of which might reasonably be construed to be contrary to the interests of the Company or its affiliates and other related companies.

**4.5** **Employment References.**

Any request for a reference with respect to Plaintiff will be referred to the Company. The Company will limit any response to confirming Plaintiff's title and dates of employment, and shall further state that in accordance with the Company's policy, no further information can be provided beyond this neutral reference.

**4.6** **No Future Employment.**

It is agreed that the employee-employer relationship between Plaintiff and the Company ended for reasons unrelated to any federal, state, or municipal statute or any cause of action Plaintiff has or may have had against the Company. It is further understood should Plaintiff again apply to work for the Company, in any capacity, the Company, based on this clause, may deny Plaintiff employment for any position he seeks, and that such denial will not be a violation of any federal, state or municipal statute and/or common law right and will not

be deemed retaliatory in any way. Accordingly, it is agreed that Plaintiff will not seek employment with the Company after the execution of this Agreement.

**5. *INTERPRETATION AND ENFORCEMENT***

5.1 **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

5.2 **No Assignment.** Plaintiff's Counsel and Plaintiff, for themselves, represent and warrant that none of them have assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion or interest therein that was asserted or could have been asserted in the Litigation against Defendant, including, but not limited to, any interest in the Litigation, or any action, proceeding, charge or complaint related to the claims that were asserted or that could have been asserted in the Litigation.

5.3 **Breach.** The Parties agree that in any action resulting from a breach of this Agreement by either party, if it is determined by the Court that either party breach this Agreement, the prevailing party in such an action will be entitled to costs and expenses, including reasonable attorneys' fees, incurred in enforcing said provisions and/or defending any action(s), in addition to any damages which may be awarded in connection with said breach.

5.4 **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties concerning matters within the scope of the Settlement and the Released Claims shall be deemed merged into this Agreement.

5.5 **Binding Effect.** This Agreement shall be binding upon the Parties, including without limitation upon the Plaintiff, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, successors and assigns.

5.6 **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length by and through counsel experienced in such matters. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

5.7 **Captions.** The captions or headings of the Sections of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

5.8 **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each of the Parties participated jointly in the drafting of this Agreement and the terms and conditions of this Agreement are not intended to be, and shall not be, construed for or against any party hereto by virtue of draftsmanship.

5.9 **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

5.10 **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

5.11 **Waivers, etc.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be, in any way, valid or binding.

5.12 **When Agreement Becomes Effective.** This Agreement shall become effective upon its execution, as set forth in Section 5.13. This provision shall not modify in any respect the meaning of the term "Effective Date" in Section 1.6.

5.13 **Execution.** This Agreement is valid and binding once executed by an authorized representative of Defendant and by Plaintiff. Execution shall be effective by the signatory signing on the designated signature block below and the signatory's counsel transmitting that signature page via facsimile or email to counsel for the other Parties. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email to counsel for the other Parties.

5.14 **Notices.** Notices required under this Agreement shall be in writing and shall be deemed given on the first business day following first-class mailing and facsimile transmission thereof. Notice hereunder shall be delivered to:

To Plaintiff:
Ryan M. Eden, Esq.
Zabell & Collotta, P.C.
1 Corporate Drive, Suite 103
Bohemia, New York 11716
(631) 589-7242
(631) 563-7475
REden@laborlawsny.com


To Defendant:
Michael K. Chong, Esq.
Law Offices of Michael K. Chong, LLC
2 Executive Drive, Suite 720

Fort Lee, NJ 07024
201-947-5200
201-708-6676 (fax)
MKC@mkclawgroup.com

**5.15** **Enforceability**: If any provision of this Agreement is held to be illegal, void, or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of, any other provision of this Agreement, provided, however, that upon any finding by a court of competent jurisdiction or an arbitrator that a release or waiver of claims or rights or a covenant set forth herein is illegal, void or unenforceable, Plaintiff agrees to promptly execute a release, waiver and/or covenant that is legal and enforceable. A failure by Plaintiff or a particular Opt-In Plaintiff to execute a valid and enforceable release within twenty-one (21) days of Defendant's request shall result in a breach by that individual only, and will require his or her full return to Defendant of settlement payments paid under this Agreement.

**5.16** **Release Notification and Withdrawal**: Defendant advises Plaintiff to discuss the terms of this Agreement and release of claims with his legal counsel. Plaintiff acknowledges that it is his choice to waive any potential claims in return for the benefits set forth herein and that each of them made this decision after careful thought, and after an opportunity to consult with his attorneys.

**5.17** **Counterparts**: To signify their agreement to the terms of this Agreement and General Release, the parties have executed this Agreement on the date set forth opposite their signatures, which appear below. This Agreement may be executed in two or more counterparts and each of such counterparts, for all purposes, shall be deemed to be an original but all of such counterparts together shall constitute but one and the same instrument, binding upon all parties hereto, notwithstanding that all of such parties may not have executed the same counterpart

**5.18** **Accord and Satisfaction**: Should any action or proceeding be instituted by any of the Plaintiff with respect to matters herein settled, released or waived pursuant to this Agreement, other than an action or proceeding to enforce the terms of this Agreement, this Agreement shall be deemed a full accord, satisfaction and settlement of any such claim(s) and sufficient basis for immediate dismissal.

**5.19.** **Attorneys' Fees and Costs**: Except as specifically provided elsewhere in this Agreement, each Party shall be solely responsible for its or their own attorneys' fees and costs in connection with the Litigation. However, the prevailing Party shall be entitled to recover all reasonable attorneys' fees and costs incurred in the prosecution of any action to enforce the terms of this Agreement.

**5.20** Photocopied, electronic signatures via PDF, and/or facsimile signatures shall be deemed originals for all purposes.

**[THIS SECTION IS INTENTIONALLY LEFT BLANK]**

      **THERFORE,** the parties to this Agreement now voluntarily and knowingly execute this Agreement as follows:

**ACCEPTED AND AGREED:**

**PLAINTIFF:**

_/s/ Johnny Thornburn_           1/30/19
Johnny Thornburn                          Dated

<u>Opt-in Plaintiffs are</u>:

"John Alford";

"Michael Bennett";

"Luis Centeno Ortiz";

"David Eastman";                          Dated

"Richard Gastelum";

"Tony Guise";

"Jay Hanley";

"Marton Keszthelyi";

"William Lafaber";

"Eli Lopez";

"Otoniel Martinez Lemus";

"Luis Mendez";

12

"Mauro Navarro";

"Rodney Parker, Jr.";

"Angel Ramirez"; and

"Michael Zimmerman."

_____
Zabell & Associates, P.C.
*As Attorneys for and on Behalf of
each of the Individual Opt-In Plaintiffs*


**DEFENDANT:**

Door Pro America, Inc.

By: _____
Name:                                              Dated _____
Title:


_____          Dated _____
The Law Offices of Michael K. Chong
*As Attorneys for Defendant*

13

"Mauro Navarro";

"Rodney Parker, Jr.";

"Angel Ramirez"; and

"Michael Zimmerman."

_____
Zabell & Associates, P.C.
*As Attorneys for and on Behalf of
each of the Individual Opt-In Plaintiffs*

**DEFENDANT:**

Door Pro America, Inc.
By: _____
Name: Dean Dun
Title: CEO

1/30/19
Dated

_____
The Law Offices of Michael K. Chong
*As Attorneys for Defendant*

1/30/19
Dated

13

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JOHNNY THORNBURN, individually and on
behalf of those individuals similarly situated,

                        Plaintiff,                    Case No.: 18-CV-03839 (DRH) (AKT)

      -against-                       **STIPULATION OF DISMISSAL**

DOOR PRO AMERICA, INC.,

                        Defendant.
-----------------------------------------------------------------x

**IT IS HEREBY STIPULATED AND AGREED**, by and between the Parties in the above captioned action through their undersigned counsel that, whereas no party hereto is an infant or incompetent person for whom a committee has been appointed, and no person not a party has an interest in the subject matter of the action, in accordance with Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure, the Complaint in the above-captioned action and all claims alleged therein be dismissed with prejudice, with each party to bear their own fees and costs; and further that Plaintiff is precluded from bringing any further claims under the Fair Labor Standards Act or New York Labor Law, or any federal, state or local law, for unpaid wages, including overtime pay, for the period set forth in Plaintiff's Complaint, or any claims that were asserted and alleged in the Complaint.

**IT IS FURTHER STIPULATED AND AGREED** that this Stipulation may be executed in counterparts with scanned PDF or facsimile signatures treated as originals.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

_____, 2018          _____, 2018

ZABELL & ASSOCIATES, P.C.                     LAW OFFICES OF MICHAEL K. CHONG, LLC


By: _____          By: _____
Ryan M. Eden, Esq.                            Michael K. Chong, Esq.
1 Corporate Drive, Suite 103                  2 Executive Drive, Suite 720
Bohemia, New York  11716                      Fort Lee, New Jersey 07024
(631) 589-7242                                (201) 947-5200
REden@laborlawsny.com                         mkchong@mkclawgroup.com
*Attorneys for Plaintiffs*                    *Attorneys for Defendant*


**SO ORDERED:**


_____

U.S.D.J.